UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WILLIAM E. GREEN,                    )
                                     )  No. CV-04-385-MWL
            Plaintiff,               )
                                     )  ORDER GRANTING PLAINTIFF'S
    v.                               )  MOTION FOR SUMMARY JUDGMENT
                                     )  AND REMANDING FOR FURTHER
JO ANNE B. BARNHART,                 )  PROCEEDINGS
Commissioner of Social               )
Security,                            )
                                     )
            Defendant.               )
_____    )

    BEFORE THE COURT are cross-Motions for Summary Judgment,
noted for hearing without oral argument on June 27, 2005. (Ct.
Rec. 13,16.) Attorney Maureen J. Rosette represents plaintiff;
Special Assistant United States Attorney Leisa A. Wolf represents
the Commissioner. The parties have consented to proceed before a
magistrate judge. (Ct. Rec. 8.) After reviewing the administrative
record and the briefs filed by the parties, the court **GRANTS**
plaintiff's Motion for Summary Judgment (Ct. Rec. 13), **DENIES**
defendant's Motion for Summary Judgment (Ct. Rec. 16), and **REMANDS**
for further administrative proceedings.

    Plaintiff applied for disability insurance benefits ("DIB")

1  and supplemental security income ("SSI") on March 8, 2000 alleging

2  an onset date of January 25, 1998 due to bipolar disorder. (Tr.

3  20;63.) After his claim was denied, plaintiff timely filed a

4  request for hearing. The Administrative Law Judge (hereinafter,

5  "ALJ,") Paul Gaughen held a hearing on June 11, 2002. (Tr. 265.)

6  In his August 20, 2002, decision, the ALJ denied benefits. (Tr.

7  16.) The Appeals Council denied review. The instant matter is

8  before this court pursuant to 42 U.S.C. §405(g).

9  <center>**ADMINISTRATIVE DECISION**</center>

10      The ALJ found that plaintiff had not engaged in substantial

11  gainful activity since the alleged onset date. (Tr. 31.) He found

12  that Mr. Green suffers from the severe impairments of bipolar

13  (depressive) disorder, anti-social personality disorder, and drug

14  and alcohol addiction in claimed remission. (Tr. 26.) The ALJ

15  found that the severity of plaintiff's impairments did not meet or

16  equal the requirements of the Listings. (Tr. 31.) He found that

17  Mr. Green has the residual functional capacity to perform work at

18  the medium exertion level, with environmental and social

19  restrictions. (Id.) The ALJ found that plaintiff is not able to

20  perform any of his past relevant work. (Id.) Relying on a

21  vocational expert, the ALJ found that plaintiff could perform

22  other work existing in significant numbers in the national

23  economy, such as a housekeeper, store laborer, and hand packager.

24  (Tr. 30.) The ALJ found plaintiff not disabled.

25  <center>**STANDARD OF REVIEW**</center>

26      The standard for review by this Court is set forth In *Edlund*

27  *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

28
ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING
FOR FURTHER PROCEEDINGS - 2

A district court's order upholding the
Commissioner's denial of benefits is reviewed de novo.
*Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).
The decision of the Commissioner may be reversed only if
it is not supported by substantial evidence or if it is
based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
1097 (9th Cir. 1999). Substantial evidence is defined as
being more than a mere scintilla, but less than a
preponderance. *Id.* at 1098. Put another way, substantial
evidence is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.
*Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
evidence is susceptible to more than one rational
interpretation, the court may not substitute its
judgment for that of the Commissioner. *Tackett*, 180 F.3d
at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th
Cir. 1999).

The ALJ is responsible for determining credibility,
resolving conflicts in medical testimony, and resolving
ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
Cir. 1995).  The ALJ's determinations of law are
reviewed *de novo*, although deference is owed to a
reasonable construction of the applicable statutes.
*McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

In the *Edlund* case, 253 F.3d at 1156-1157, the court set out
the requirements necessary to establish disability:

Under the Social Security Act, individuals who are
"under a disability" are eligible to receive benefits.
42 U.S.C. § 423(a)(1)(D). A "disability" is defined as
"any medically determinable physical or mental
impairment" which prevents one from engaging "in any
substantial gainful activity" and is expected to result
in death or last "for a continuous period of not less
than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an
impairment must result from "anatomical, physiological,
or psychological abnormalities which are demonstrable by
medically acceptable clinical and laboratory diagnostic
techniques." 42 U.S.C. § 423(d)(3). The Act also
provides that a claimant will be eligible for benefits
only if his impairments "are of such severity that he is
not only unable to do his previous work but cannot,
considering his age, education and work experience,
engage in any other kind of substantial gainful work
which exists in the national economy...." 42 U.S.C. §
423(d)(2)(A). Thus, the definition of disability
consists of both medical and vocational components.

In evaluating whether a claimant suffers from a
disability, an ALJ must apply a five-step sequential

inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

When an impairment is severe but does not meet or equal the requirements in the Listings of Impairments, the sequential evaluation process must be employed to identify an individual's functional limitations and restrictions and assess his or her remaining capacities for work related activities. **SSR 96-8p.**

### ISSUES

The general issue is whether there is substantial evidence to support the ALJ's decision to deny benefits and, if so, whether that decision was based on proper legal standards. The specific issues raised by the parties are whether the ALJ properly credited the medical opinions and whether he asked the vocational expert a hypothetical that included all of plaintiff's impairments.

### ADMINISTRATIVE HEARING

Plaintiff was 44 years old on the date of the hearing. (Tr. 279.) He completed high school and had worked as a carpenter, backhoe operator, mill worker, logger and welder-pipefitter. (Tr. 279-82.) At the hearing, plaintiff testified that his back has bothered him every day since an on-the-job injury in the spring of 1997. (Tr. 282-83.) He can sit for 30 minutes, stand for 20 to 30 minutes, and walk for one mile before needing to rest. (Tr. 283-84.) He can lift and carry ten to fifteen pounds. (Tr. 284.) He can climb stairs but only very slowly. (Tr. 285.)

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING
FOR FURTHER PROCEEDINGS - 4

1

2                                **ANALYSIS**

3                        1.  Weighing Medical Evidence

4        Plaintiff contends that the ALJ erred when he ignored the opinion

5   of examining physician Clark Ashworth, Ph.D. (Ct. Rec. 14 at 13.) The

6   Commissioner responds that the ALJ appropriately gave Dr. Ashworth's

7   assessed limitations in November of 2001 little weight because the

8   assessed poor functioning was described as occurring "during periods

9   of disrupted mood," and the medical records reflect that plaintiff was

10  doing well on his medications from August of 2000 through March of

11  2001, and from July of 2001 through February of 2002. (Ct. Rec. 17 at

12  8-9.)

13       Dr. Ashworth completed his assessment of the plaintiff on

14  November 29, 2001. (Tr. 235.) After administering several tests, he

15  diagnosed bipolar I disorder, most recent episode depressed,

16  polysubstance dependence in partial remission by self report, and rule

17  out personality disorder NOS with cluster B features. (Tr. 241.) Dr.

18  Ashworth assessed a GAF of 45, indicating serious symptoms (e.g.,

19  suicidal ideation, severe obsessional rituals, frequent shoplifting)

20  OR any serious impairment in social, occupational, or school

21  functioning (e.g., no friends, unable to keep a job). DIAGNOSTIC AND

22  STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM -IV), at

23  32 (1995). (Id.)

24       Dr. Ashworth's prognosis was guarded. (Tr. 241.) He opined that

25  plaintiff's ability to perform activities within a schedule, maintain

26  regular attendance, and be punctual was poor. (Tr. 242.) He  found

27  that plaintiff's ability to sustain an ordinary routine without

28
    ORDER GRANTING PLAINTIFF'S MOTION
    FOR SUMMARY JUDGMENT AND REMANDING
    FOR FURTHER PROCEEDINGS - 5

1 special supervision, work with or near others without being distracted
2 by them, complete a normal workday or workweek, and perform at a
3 consistent pace was poor. (Id.) Dr. Ashworth opined that plaintiff's
4 ability to interact appropriately with the public, accept instructions
5 and respond appropriately to criticism from supervisors and to set
6 realistic goals or make plans independently of others was also poor.
7 (Tr. 243.) Dr. Ashworth described the medical and clinical findings
8 supporting his assessment as "mental status/history – during periods
9 of disrupted mood, unlikely to function well." (Tr. 242.)

10    In a disability proceeding, the treating physician's opinion is
11 to be given special weight because of his familiarity with his patient
12 and his patient's physical condition. See *Fair v. Bowen*, 885 F. 2d
13 597, 604-05 (9th Cir. 1989).  The opinion of an examining physician
14 may be rejected for "specific, legitimate reasons" that are supported
15 by substantial evidence in the record. *See Andrews v. Shalala*, 53 F.
16 3d 1035, 1043 (9th Cir. 1995). An ALJ may not discredit the opinion of
17 an examining physician based solely on the opinion of a consulting
18 physician. *Lester v. Chater*, 81 F. 3d 821, 831 (9th Cir.
19 1990)(citation omitted). The opinion of a non-examining physician may
20 constitute substantial evidence if it is supported by and consistent
21 with other evidence. *Andrews*, 53 F. 3d at 1043; *Lester*, 81 F. 3d at
22 830-31. The ALJ is responsible for determining credibility, resolving
23 conflicts in medical testimony, and resolving ambiguities. *Edlund v.*
24 *Massanari*, 253 F. 3d 1151, 1156 (9th Cir. 2001).

25    Plaintiff's contention that the ALJ ignored Dr. Ashworth's
26 opinion is not supported by the ALJ's decision. The ALJ specifically
27 notes Dr. Ashworth's opinion that plaintiff's serious limitations
28

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING
FOR FURTHER PROCEEDINGS - 6

occur *during periods of disrupted mood*. (Tr.   24; 242-43)(italics added.) The ALJ compared this conditional opinion to the medical records of plaintiff's treating physicians. (Tr. 25-26.)

On August 24, 2000, treating physician Avery Nelson, M.D., noted that plaintiff is doing well. (Tr. 244.) After plaintiff complained of sleepiness, Dr. Nelson reduced his dosage of depakote. (Id.) In October of 2000, plaintiff reported he was less sleepy. Dr. Nelson noted plaintiff was not symptomatic at this time. (Tr. 245.) The ALJ observes that in December of 2000, Dr. Nelson reported that plaintiff's condition is unchanged. He is doing well on his medication. (Tr. 24, relying on Tr. 246.) On December 28, 2000, his treatment providers indicated that plaintiff has moved to an apartment, lives independently, and has maintained himself in the community. (Tr. 247.) Plaintiff was again asymptomatic. (Id.) He was diagnosed as having bipolar disorder in full remission. (Tr. 249.)

The ALJ notes that plaintiff was next seen on March 22, 2001. (Tr. 25, relying on Tr. 251.) His counselor, Wes Minter, MSW, opined that plaintiff is currently doing well. (Tr. 251.) In June of 2001, Dr. Nelson noted that plaintiff's affect showed a normal range and depth. His concentration was good. He was able to focus with no difficulty and seemed comfortable during the interview. (Tr. 252.) The ALJ points out that from July 31, 2001 through February 7, 2002, plaintiff remained asymptomatic and continued to receive medication review. His bipolar disorder remained in remission. (Tr. 25, relying on Tr. 253-54; 255; 257-58.)

The opinion of an examining physician can be rejected for specific and legitimate reasons supported by substantial evidence.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING
FOR FURTHER PROCEEDINGS - 7

*See Andrews v. Shalala*, 53 F. 3d at 1043(9th Cir. 1995). Dr. Ashworth's assessed limitations are described conditionally: during periods of disrupted mood, plaintiff's functioning is poor. Even if the ALJ fully credited Dr. Ashworth's opinion, it would not change the fact that Dr. Ashworth merely described plaintiff's limitations when he is experiencing disrupted moods.

The treatment records do not reveal disrupted moods. From March of 2000 through February of 2002, plaintiff is described by his treatment providers as doing well. (Tr. 152-53; 199-201; 244; 247; 250-58.) By December 28, 2000, plaintiff's bipolar disorder was in full remission. (Tr. 249.)

Dr. Ashworth examined plaintiff on November 29, 2001. (Tr. 235.) The ALJ gives greater credit to the treating physician's opinion that plaintiff had no symptoms and his bipolar disorder was in full remission both before and after Dr. Ashworth's assessment. This is a specific and legitimate reason to discredit an examining physician's opinion.

The ALJ also relied on the opinion of the testifying medical expert, W. Scott Mabee, Ph.D., in discrediting Dr. Ashworth's limitations. (Tr. 26.) Dr. Mabee testified that the results of the MMPI administered by Dr. Ashworth are invalid because "there is such an over-reporting of psychological symptoms." (Tr. 274.) Dr. Mabee opined that Dr. Ashworth's assessed GAF of 45 is likely based on subjective complaints. (Id.) Dr. Mabee opined that plaintiff's overall testing and ability to function in the community suggest moderate, not severe, limitations in functioning. (Tr. 275.) The ALJ appropriately relied on the testimony of Dr. Mabee as additional substantial

evidence in rejecting some of Dr. Ashworth's assessed limitations.

The ALJ also observed that plaintiff's own statements do not support finding severe limitations in functioning such as those assessed by Dr. Ashworth. The ALJ notes that plaintiff told Dr. Ashworth that he is unable to work because of back pain, not because of psychological problems. (Tr. 24; 235.) Plaintiff testified at the hearing that he stopped working in May or June of 1997 after hurting his back. (Tr. 282.) With respect to psychological impairments, plaintiff testified:

"I'm not so antisocial that I can't be around people. It's just that sometimes when I'm working or something and somebody bothers me I just get a little irate and maybe go a little farther than I should."

(Tr. 304.) Plaintiff's own statements contradict the level of impairment assessed by Dr. Ashworth. The ALJ appropriately relied on this evidence as well when he weighed Dr. Ashworth's opinion.

The ALJ rejected some of Dr. Ashworth's limitations for specific and legitimate reasons supported by substantial evidence. The ALJ appropriately weighed Dr. Ashworth's opinion.

### 2. ALJ's Hypothetical

Plaintiff contends that the ALJ failed to include all of his assessed mental limitations in the hypothetical posed to the vocational expert, ("VE"). (Ct. Rec. 14 at 11.) Specifically, plaintiff contends that while the ALJ stated he was adopting the mental limitations set forth by the testifying medical expert, W. Scott Mabee, Ph.D., his hypothetical failed to include all of the impairments listed by Dr. Mabee. (Ct. Rec. 14 at 11-13.) The

Commissioner responds that the ALJ's hypothetical "properly accounted for all of Plaintiff's physical and mental limitations that the ALJ found credible." (Ct. Rec. 17 at 11.)

At step five, the Commissioner bears the burden of showing that a plaintiff can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the plaintiff's education, age, work experience, and his residual functional capacity. 20 CFR §§ 220.131(e), 404.1520(f), 404.1560(b)(3). To establish that there are jobs in "significant numbers" in the national economy that a claimant can perform, the ALJ may call a vocational expert to testify. At the hearing, the ALJ should pose hypothetical questions to the vocational expert that "set out all of the claimant's impairments." *Gamer v. Secretary of Health and Human Servs.*, 815 F. 2d 1275, 1279 (9th Cir. 1987). The ALJ's depiction of the claimant's impairments must be "accurate, detailed and supported by the medical record." *Tackett v. Apfel*, 180 F. 3d 1094, 1101 (9th Cir. 1999).

The hypothetical questions that the ALJ posed to the VE did not set out all of the impairments that the ALJ found. The ALJ notes that Dr. Mabee, the testifying medical expert, set forth two areas of marked limitation: in the ability to maintain social functioning, and, more specifically, in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 26.) The ALJ notes that he finds this testimony "consistent with the medical evidence of record." (Id.) The ALJ finds that plaintiff has "marked difficulties in maintaining social functioning." (Tr. 26-27.) In assessing plaintiff's residual functional capacity, ("RFC") however, the ALJ

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING
FOR FURTHER PROCEEDINGS - 10

states that "from time to time he [plaintiff] may have difficulties accepting instructions and criticism from the supervisor; and will likely have difficulty in jobs requiring frequent collaboration with others." (Tr. 29.)

In the ALJ's hypothetical question to the vocational expert, he stated:

"From time to time he may have difficulties in accepting instruction and criticism from his supervisor. . . There's some obstinance and reluctance about accepting the instructions from time to time. As part of this, he'll have difficulty in jobs requiring frequent collaboration with others or frequent interaction with the supervisor. . . worker would have difficulty handling jobs also which would require frequent public contacts."

(Tr. 309-310.)

The problem with this, as plaintiff points out, is that while the ALJ specifically found that Dr. Mabee testified that plaintiff's difficulties in maintaining social functioning are "marked", and based on this assessment, the ALJ *found* that this is a marked impairment, his hypothetical described the limitation as causing difficulties "from time to time." (Tr. 26, 29, 310.) A marked impairment is defined as one causing a "very significant interference with work-related activities." (Tr. 231.) This contradicts the ALJ's hypothetical where the impairment was sporadic and occurred only "from time to time." Because the ALJ's hypothetical is inconsistent with his stated findings, remand is necessary. *See Jones v. Heckler*, 760 F. 2d 993, 998 (9th Cir. 1985) ("To qualify as substantial evidence, the testimony of a vocational expert must be reliable in light of the

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING
FOR FURTHER PROCEEDINGS - 11

1 medical evidence.")

2                                    <u>Conclusion</u>

3        Having reviewed the record and the ALJ's conclusions, this court

4 finds that the ALJ's decision is in part supported by substantial

5 evidence in the record but is not free of legal error. Because the

6 ALJ's findings are inconsistent with his hypothetical to the

7 vocational expert, remand is necessary.

8        Accordingly,

9        **IT IS ORDERED**:

10        1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 13)

11 is **GRANTED,** and the case is remanded for further administrative

12 proceedings.

13        2. Defendant's Motion for Summary Judgment (Ct. Rec. 16)

14 is **DENIED.**

15        3. Any application for attorney fees may be filed by

16 separate Motion.

17        4.  The District Court Executive is directed to file this

18 Order and provide a copy to counsel for Plaintiff and Defendant.

19 Judgment shall be entered for Plaintiff and the file **CLOSED.**

20        **DATED** this 26th day of July, 2005.

21                              s/ Michael W. Leavitt

22                              MICHAEL W. LEAVITT
                                UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28
ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND REMANDING
FOR FURTHER PROCEEDINGS - 12